My name is Victoria Bramble. I work for the Federal Public Defender's Office in Tucson, Arizona, and I represent Patrick Delaney in this case. This case really is about the heart of the Sixth Amendment. The Sixth Amendment exists to protect the right of the accused to challenge the government's case against him and to allow him to put his own story before the jury. The way the Sixth Amendment accomplishes this, in part, is through compulsory process, allowing the defendant to present evidence through his own witnesses. And it doesn't require that a defendant has to testify in order to get his story out when there are other witnesses that can do that. The case – the idea is, too, that even if evidence might seem like it's not the most reliable or there's arguments as to weight or credibility, that really the jury should get to hear it, and then the jury itself will assess the credibility. The rules are really bent towards allowing the evidence to come in and not towards excluding it. Well, what's most helpful to me is if you could tell us exactly what statements – and I know that you didn't tell the court at the time, but let's put that aside and just take your current representations about what statements would have been made and why, given how much did come in, why it would have made any difference. Well, first of all – and I'll answer the last part of your question first. The reason why this was so important and why it would have made such a difference in this case was because the stage had really already been set. All of the detail had been provided, and it was a somewhat long and twisted tale of all these different places they went. Ending up where the parties were in a third hotel room, they had ridden in a different vehicle, so they thought that the vehicle they were riding in was being stolen. They knew something terrible was happening, but they didn't know exactly what it was. They thought this car was going to be stolen and resold. Then when they go to this compound and see it being washed down, they realize that it wasn't stolen. And this is the critical point where the testimony that had been allowed in up to this point was stopped. And the statements that would have been elicited had the judge not ruled that they were hearsay were paragraphs 4 through 9 of the affidavit of Nicole Blodgett. And that's in the first excerpt of records 67 through 68 in NCR 116. And basically that was all of Patrick Delaney's comments as the events were happening. And comments is really perhaps the wrong word to use. What was happening was these events were happening, and Mr. Delaney was getting excited. He was upset. He was worried about his safety and his fiancée's safety. He didn't know what was happening, and he kept saying, what's up? What's happening? What's going on? In an angry tone of voice. I'm switching gears now. But just to take one of those in terms of whether it's hearsay or isn't hearsay. I guess a statement like what's up, what's going on has sort of two components. I mean, one is it might demonstrate anxiety if it were reported that way. But it certainly has substantive content as well, i.e., I don't know what's going on. Well, that's an inference, I think, from the statement. And certainly. Well, it's the only. I mean, if she was really only trying to demonstrate that he was upset, she could have said he was upset. I think that in some instances, and this is one, a person's words are so intertwined with their conduct that you really can't separate one from the other. And certainly she could have said, yeah, he seemed upset and he was angry. But it's so much more forceful and accurate as to what she was trying to set forth in her testimony, that he was upset and shaking and he kept asking repeatedly what's going on. Let me interrupt. The usual rule on admission or rejection of evidence is abuse of discretion. Now, the district court addressed that issue in the motion for new trial. Is that correct? That's correct. Well, tell us what the district court had to say about it. In essence, wasn't it, well, most of that got in. It was harmless error. I think that that's exactly what the district court ruled. I would point out that the district court did not appear surprised or feeling like this, kind of a high hill to climb because you've got to demonstrate to us that the district court made a mistake and really on the face of it, it would have made a difference. What's the test anyway for the harmless error or not? Can you tell me that? Well, I would argue, first of all, that the standard of review wouldn't be plain error because the district court Well, I'm assuming it would not. Okay. As far as the error was not harmless because when the testimony was prohibited and precluded, that was at the most critical point in the case. Up until Nicole Blodgett was stopped from explaining the things that Patrick Delaney was saying in addition to how he was reacting. But Counsel Blodgett testified at length about the trip to Mexico, described in detail both the events that led to the illicit border crossing and how they affected Delaney. It seems to me it appears that he was able to fully present his defense theory. Well, Your Honor, what happened was that we were almost able to do that, but right at the point where there was a moment where everything changed. What the jury knew and what they had heard was that Mr. Delaney and Nicole thought that their car that they had been riding in had been stolen. And that was the bad thing that was happening. But what occurred after that and after the judge had ruled that the defense could not continue to present that kind of testimony, what happened was they were taken to a remote area by the border, and the fact that they were transported there came out. But then they saw that the Escalade was there, so it wasn't being stolen, and they were directed to get back into it. The government used a lot of the route of travel. Their actions, Mr. Delaney's actions after he crossed the border, all during that critical time as strong evidence of his guilt. And yet the strong evidence that we had that he wasn't guilty, that he still didn't know what was going on, even though he saw the Escalade, even though there was a luggage rack on it, and maybe somebody might have realized that something now was happening, or maybe he changed his mind. Okay. Well, let's assume that I understand what you're saying. I'd like to ask another question. In the testimony of Officer Kovacek, she testified she handed Delaney back his driver's license and other paperwork and told him that he was free to go prior to seeking consent to the search. My question is, then, in what sense was consent not voluntarily given? Well, Your Honor, first of all, I wanted to maybe clarify the way that I wrote in my brief, which was not completely clear about that. I think that what the officer testified was that she had returned his paperwork. And the question remains in my mind and how I stated it in my opening brief that perhaps the paperwork was the rental paperwork and not the driver's license. That was never ---- Well, I read in the testimony of Alex, excerpts from pages 65 and 66 indicate that Officer Kovacek testified that she handed Delaney back his paperwork, but that was following discussion of the driver's license and all the paperwork, and the inference is very strong that it was the driver's license as well. Yes. All right. Thank you. Thank you. I just have one more question. Did you try this case? I did, Your Honor. Were you able to argue that the evidence which was admitted shows that your client did not have any intent to deal in drugs or to bring drugs in from Mexico? I certainly did to the best of my ability, but my arguments I think would have been stronger and a lot more persuasive had the evidence surrounding when he got into the car and actually drove it across the border and his actions shortly after crossing the border. In other words, your position is you were not allowed to put in really crucial evidence that would have made your argument much stronger. That's correct, Your Honor. Thank you. I see that I'm almost out of time, but maybe I could reserve a few seconds. Thank you very much. I'll give you a few seconds. Good morning. May it please the Court. Celeste Corlett, assistant United States attorney here on behalf of the United States. In this case, the district court did not err in precluding the defendant's hearsay statements through the defendant's witness under the state-of-mind Federal Rule of Evidence 8033 exception. As the Court has already acknowledged, it's important to say. Can I ask a question? The abuse of discretion standard, I assume, still permits legal review of the question of whether this is or isn't hearsay. Is that right? Or is that subject to abuse of discretion as well, in your view? Whether or not the statements were hearsay or not. Right. I would assume so, Your Honor, although I can't really cite any particular case. Okay. Because you put it together in one sentence, abuse of discretion and hearsay, and if we thought it wasn't hearsay, I – it seems to me we would then be getting to the prejudice question more than we would get into the hearsay question. Go ahead. I understand that. And I believe that the statements that the defendant was attempting to admit were hearsay statements. They were offered for the truth of the matter. The first proffer by the defendant was at trial, and that's on the excerpt of record at 329. And there the defendant claims that the defendant's witness is going to talk about discussions, quote, between the defendant and the witness, quote, what they were worrying about, unquote. Do you have any circuit authority that supports the conclusion that these questions like what's going on, what happened, what do you want me to drive, are assertions Do you have any comparable authority or? Again, I can't think of any authority that says these are assertions. However, I couldn't find any, and I thought maybe you could help me out. I'm sorry. But the defendant himself said basically that these are assertions. Again, at ER 329, he said these statements are going to explain why, what was going on, and who was – or, I'm sorry, what they were doing, why they were doing certain behaviors. So the defendant himself is saying these are statements that are going to explain his actions. And as the rule, and U.S. v. Emert as cited in the brief, and U.S. v. Cohen, which is a Fifth Circuit case but cited approvingly in Emert, states that it's – these are not statements of mind. These are not – his mind or his – what he's trying to do is to prove the happening and event that caused his – his – I'm sorry, I'm losing the word here. But he's not trying to prove what he was thinking or, I'm sorry, what he was feeling or his emotions, but he's trying to actually say, this is why I was feeling these emotions. And that's exactly what the rule says, is not allowed, that those are hearsay statements. And again, even in his second set, if the Court were to believe that the district court should have known that this were the statements that were going to be made, the second set of statements that were offered after the trial, after the verdict in the motion for a new trial, and this is at ER 67 through 68, in the motion for a new trial, even those statements that after trial the defendant is saying these should have been allowed in, those statements, again, are trying to make a statement of fact, trying to explain why he was feeling a certain way. For example, it's – That's not very odd. I mean, things like why, why, why. Or, you know, what's going on here. I mean, they comply – they include an implication that he didn't know what was going on here, but that's about it. But the statement why, why, why was not the only statement that the defendant was asking to enter. It was why, why, why, and then an explanation of why he was saying that. For example, he said that the defendant was confused. That's a state of mind. But then the rest of the statement that they wanted to admit was because he didn't know whether they were in the United States. That appears in the statement of what he was believing and why he had that state of mind. So it's – I'm sorry, but I don't know where you're getting that from. I mean, all we know about that is the affidavit. It said, If asked what Patrick said when gestured to the back of the Escalade after seeing it being washed, it would have answered that Patrick said why, why, why. That's it. I mean, that's all it says. Okay. I'm sorry. In that particular one, the question – I'm sorry. The statement that was wanted to be in was the why, why, why. The next line, paragraph 8, ER 68, is where they're saying that he said he was confused and then they explain why he was confused. So it's not just the emotion of confusion, but the rest of it. And as the Court had pointed out before, even a question can be an assertion. It's trying to infer that he doesn't know what's going on, he doesn't understand what's happening, as opposed to that he's just confused. I want to ask you a question. I'm going to assume, without quite deciding yet, that you're wrong, that it wasn't hearsay. It wasn't introduced to show the truth of what was going on. It was introduced either for a state of mind or for some other valid reason. Just assume that. If that is so, then it's an error, and does abusive discretion apply, or is it just an error? And so what we've got to consider now, if it's an error, is whether it was harmless or not. So would you address that? That's what bothers me. Was it harmless or harmful error, assuming it should have been amended? Well, Your Honor, I think, again, it depends on which group of statements you're talking about. If you're talking about the first group of statements that the defendant did proffer to the Court at ER 329, those are the statements that were before the Court, those were the statements the Court made the decision on. But later, after the trial, all of these statements must be changed. Well, I know that. Okay. But you're now going on this as only plain error, and there's pretty good authority when the judge indicates he's not going to allow this kind of evidence, there's no necessity for putting in the direct question and answer to be made, that the ruling has been made. I'm just going to assume that it's not plain error, and I want you to tell me whether in the record here why it was not harmless, why it was harmless error. That's got to be your position. Yes, Your Honor. The reason it was harmless is because the defendant – there was no prejudice to the defendant by not having this information admitted, because most of his story did get before the jury. In the record, 307 to 318, and again on 335 to 347, the witness was able to tell the whole story about what happened, that they were kidnapped, that they didn't know what was going on, that they thought the car was being stolen, that they were – the car was taken away from them, then they were brought back to the car, that people with guns were walking down the car, that they were forced to get in the car, they were forced to then drive with this person across the international border on a dirt road, and then at the end, right before they get onto the paved road, that the witness was able to say that the defendant was forced to drive the vehicle, and the defendant – I'm sorry, the witness testified that they didn't know where they were, that they assumed they were in the United States. So the whole story was before the jury. Kagan. And from her own point of view as opposed to from his point of view. Well, it was both, because 307 to 318, there were many, many times that the witness testified, the defendant said this, one of the passengers said this. And over and over, she was able to elicit the defendant's hearsay statements. And additionally, Your Honor, the evidence was overwhelming that the defendant had been possessed with the intent to distribute the marijuana. This was a large amount of drugs. The defendant was controlling the vehicle. When the agent stopped the vehicle, the defendant was the one who was driving it. Excuse me, counsel. You're running out of time. And I want to ask about the search of a locked container. Are you arguing that the search of the locked container holding the marijuana was within the consent to search the car when Delaney did not have the keys to the container and they had to break into the container? Well, Your Honor, I don't even believe the Court needs to reach the issue of consent, because as the district court found, when the agent smelled the marijuana on her own, that provided an independent basis for probable cause to search the vehicle. And then once she had probable cause to search the vehicle, then she was able to look into that carrier and find that. And so even if we were to assume, which the government does not agree, that the defendant did not give consent to search his vehicle. No, he gave consent to search the vehicle, but he had a locked container that they had to break into. That's correct, Your Honor. What I'm saying is even if you assume he didn't consent, that this was just a traffic stop, and an extension of the traffic stop, she asked him to step out of the vehicle, she ran the dog around the vehicle as he smelled the marijuana. Exactly. The dog alerted to the marijuana, and then she walked over to where the dog alerted. She smelled marijuana. And at that point, she let them know that they were under arrest for this offense. Thank you. And if I could just briefly, one quick item. On ER-216 is where the defendant – I'm sorry, the witness testified that she returned both the driver's license and the documents. ER-216. Thank you. Thank you very much. Thank you for your argument. I will give you a minute or so for rebuttal. Thank you. The main difference between this case and the cases that the government cited, Montanant and Cohen, I think, are that in those cases, the comments, they were really comments and they were after the fact. They weren't – they weren't solicited in an exciting way as the deaths were evolving. I don't think we have to pigeonhole what we offered as an excited utterance, but there is that element of just current state of mind as events are evolving. And, in fact, in Fontenot, this Court indicated that the first comment, which was – which was, they're going to kill my wife, that that comment that was made right as the phone call, as the person was hanging up to a third party, that that very well might have been an excited utterance, but it didn't matter because the error was harmless. In this case, the error wasn't harmless because of the timing of when the testimony was stopped. If it had been some other portion of testimony, maybe at the beginning or the middle, it might not have mattered. But this was the critical time and this was the crux of the case. Thank you. Thank you very much. Thank you, Mr. Counsel, for a useful argument. The case of United States v. Delaney is submitted. And we will proceed to United States v. Aplan.
judges: Bright , D.W. Nelson, Berzon